UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA M. DZIEWA,

        Plaintiff,

  v.              **DECISION AND ORDER**
                     08-CV-817S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

  1.  Plaintiff Linda M. Dziewa challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since September 1, 1998. (R. at 15, 73, 80-82.) Plaintiff contends that her impairments render her unable to work and, therefore, asserts that she is entitled to disability benefits under the Act.

  2.  Plaintiff filed an application for Supplemental Security Income benefits ("SSI") on December 22, 2005. (R. at 80-82.) Her application was denied initially, after which she requested a hearing before an ALJ. That hearing took place on March 18, 2008. (R. at 504-26.) The ALJ considered Plaintiff's case *de novo*, and on May 15, 2008, issued a decision denying Plaintiff's application for benefits. (R. at 12-28.) On October 15, 2008, the Appeals Council denied Plaintiff's request for review. (R. at 2-4, 5.) Plaintiff filed the current civil action challenging Defendant's final decision on November 7, 2008.[1]

  3.  The parties subsequently filed Motions for Judgment on the Pleadings on June 29, 2009. After full briefing, this Court deemed oral argument unnecessary and took

---

[1] The ALJ's decision became the Commissioner's final decision in this matter after the Appeals Council denied Plaintiff's request for review.

1

the motions under advisement on August 17, 2009. For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.   In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since March 28, 2005 (R. at 18); (2) Plaintiff's combination of impairments are "severe" within the meaning of the Act (R. at 18)[2]; (3) Plaintiff's impairments do not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 404 (R. at 18-20); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain restrictions (R. at 20-26); and (5) although Plaintiff is unable to perform any of her past relevant work, she is able to perform work that exists in significant numbers in the national economy (R. at 26-28). The ALJ therefore concluded that Plaintiff was not disabled. (R. at 28.)

10.   Plaintiff advances seven challenges to the ALJ's decision. First, Plaintiff argues that the ALJ erred by failing to re-contact her treating physician, Dr. Ronald Santasiero for clarification of his opinion dated March 21, 2006. (Docket No. 8, pp. 4-7.) Therein, Dr. Santasiero indicated, by checking a box on the form he completed, that

---

[2] Specifically, the ALJ found that Plaintiff's general anxiety disorder, personality disorder, somatoform disorder, fibromyalgia, and neck and back pain were "severe" impairments. (R. at 18.)

4

Plaintiff was "totally and permanently unemployable." (Docket No. 8, pp. 4-7; R. at 182.) Plaintiff now argues that the ALJ should have re-contacted Dr. Santasiero "for a more specific medical interpretation of why [she] was totally and permanently unemployable." (Docket No. 8, p. 6.)

However, an examination of the record appears to indicate that Dr. Santasiero was re-contacted. (R. at 106-8.) Specifically, the New York State Office of Temporary and Disability Assistance, the office responsible for obtaining information in connection with an application for SSI benefits, indicated in a report dated December 8, 2007, that it contacted Dr. Santasiero. (R. at 106-7.) In response, Dr. Santasiero informed the office that it "has no medical records available." (R. at 107.)

Nonetheless, even if Dr. Santasiero was not re-contacted, this Court would find that the ALJ committed no error, as the record contains sufficient evidence from which the ALJ could make a disability determination. See 20 C.F.R. § 404.1512(e) (re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record). For instance, in determining whether Plaintiff was disabled, the ALJ expressly considered and evaluated the opinions of numerous medical professionals, including the opinion of Dr. Santasiero. Thus, for these reasons, Plaintiff's first challenge is rejected.

11. Second, Plaintiff argues that the ALJ erred by failing to properly weigh Dr. Santasiero's opinion. (Docket No. 8, pp. 7-10.) Specifically, Plaintiff contends that the ALJ violated SSR 96-2p because he "fail[ed] to provide any reasons, much less good cause, for his obvious rejection of [this] opinion." (Docket No. 8, pp. 7-10.)

Generally, "the Social Security Administration is required to explain the weight it

5

gives to the opinions of a treating physician." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999). Moreover, Social Security Ruling 96-2p provides that:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-p, 1996 WL 374188, at *5 (S.S.A. Jul. 2, 1996).

Having reviewed the evidence at issue, this Court finds no error in the ALJ's treatment of Dr. Santasiero's opinion. First, the ALJ determined that Dr. Santasiero's opinion was not entitled to much weight because he saw Plaintiff only once. (R. at 26.) Second, the ALJ noted that, besides merely stating "prognosis poor," Dr. Santasiero failed to support his conclusion with any treatment notes or medical findings. (R. at 26.) Third, the ALJ carefully considered the medical opinions of Drs. Toni Spinaris, Nancy McGarvie, Samuel Balderman, and Renee Baskin, none of whom supported Dr. Santasiero's opinion that Plaintiff was unable to work. (R. at 20-26.) Lastly, because Dr. Santasiero merely checked the box on a standardized form indicating that Plaintiff was disabled, his opinion is "only marginally useful." Halloran v. Barnhart, 362 F.3d 28, 31 n. 2 (2d Cir. 2004) (noting that standardized form is only "marginally useful"). Thus, it is clear that the ALJ complied with the requirements of SSR 96-2p and, therefore, Plaintiff's second challenge is rejected.

12. Third, Plaintiff argues that the ALJ violated SSR 06-3p by "summarily dismiss[ing]" the findings of Amy Socha, her clinical therapist, and Thomas D. Denecke, her chiropractor. (Docket No. 8, pp. 10-13.) In a report dated March 14, 2008, Ms. Socha opined that Plaintiff is "psychiatrically unstable at this time and unable to work at this time." (R. at 179.) Additionally, in a questionnaire dated January 7, 2006, Mr. Denecke noted

6

Plaintiff's limitations due to her back problems. (R. at 228-40.) According to Mr. Denecke, those limitations include abnormal motor strength, hypermobility of certain vertebrae, and mechanical impairment of "cervical and lumbar spine." (R. at 230-31, 235.)

Social Security Ruling 06-3p provides that chiropractors and therapists are considered "other sources." As such, their opinions "may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." Genier v. Astrue, 298 Fed. Appx. 105, at * 4 (2d Cir. 2008); see also SSR 06-3p, 2006 WL 2329939, at **2-3 (S.S.A. Aug. 9, 2006). Although the ALJ is "certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." Genier, 298 Fed. Appx. at *4.

In the present case, this Court finds the ALJ committed no error in evaluating the opinions of Ms. Socha and Mr. Denecke. For instance, the ALJ noted that Ms. Socha filed no supporting documentation or medical reports in connection with her report, and also noted that she was not a physician. (R. at 26.) Moreover, after analyzing Ms. Socha's opinion, the ALJ cited SSR 06-3p, thereby demonstrating his familiarity with this ruling. (R. at 26.) With respect to Mr. Denecke, this Court notes that his report is contradicted by the opinions of Dr. Nancy McGarvie, who opined that Plaintiff has a full range of motion in the cervical and lumbar spine and reported "negative physical findings," and Dr. Samuel Balderman, who opined that Plaintiff's range of motion in the cervical and lumbar spine was "full" and that her "physical examination was normal." (R. at 21.) Drs. McGarvie and Balderman are both acceptable medical sources. See Figueroa v. Astrue, No. 04 Civ.

7805, 2009 WL 4496048, at *12 (S.D.N.Y. Dec. 3, 2009) (rejecting the plaintiff's challenge to an ALJ's decision when the opinion by plaintiff's chiropractor was contradicted by that of a consultative physician, an acceptable medical source). Thus, the ALJ did not summarily dismiss the opinions of Ms. Socha and Mr. Denecke, but rather, considered them in accordance with SSR 06-3p. Accordingly, Plaintiff's third challenge is rejected.

13. Fourth, Plaintiff argues that the ALJ erred when evaluating the severity of her mental condition, and the corresponding impact it had upon her ability to work. (Docket No. 8, pp. 14-16.)[3] Specifically, Plaintiff maintains that her mental condition supports a greater level of restriction than the amount recognized by the ALJ. (Id.) In support, Plaintiff cites the opinions of Ms. Socha and Dr. Baskin, in addition to the testimony of her mother, Nancy Mauerman, and her own subjective complaints. (Docket No. 8, pp. 14-15.)

This Court, however, finds that the ALJ committed no error when determining the extent of Plaintiff's restriction based upon her mental condition. First, as explained above, the ALJ properly determined that Ms. Socha's opinion was entitled to little weight. Second, to the extent Plaintiff's challenge is premised on her own subjective complaints, the ALJ found her to be not credible and, therefore, did not extend much weight to these complaints. (R. at 23-25.) Third, although Dr. Baskin opined that Plaintiff's psychiatric problems could interfere with her ability to function on a daily basis (R. at 247), Dr. Baskin also stated that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; learn new tasks; perform complex tasks with

---

[3] The ALJ held that Plaintiff is "limited to the performance of simple, routine, repetitive tasks involving only incidental (defined as totaling not more than 1/6 of a routine eight-hour work shift) independent judgment, discretion, or changes in work processes; and precluded from interaction with the general public and from working around hazards (unprotected heights, dangerous machinery)." (R. at 20) (parentheses in original).

supervision; her concentration and memory skills were intact; and her cognitive functioning was average to below average. (R. at 21-22.) Lastly, for the reasons discussed immediately below, Ms. Mauerman's testimony does not support Plaintiff's contention. Accordingly, Plaintiff's fourth challenge is rejected.

14. Fifth, Plaintiff argues that the ALJ violated SSR 96-7p by ignoring lay evidence. (Docket No. 8, pp. 16-17.) In particular, Plaintiff argues that the ALJ failed to consider the testimony of L. Omeara, a Social Security Administration employee, who assisted Plaintiff in completing her application for SSI benefits, and reported that Plaintiff had difficulty concentrating, understanding the issues, and sitting. (Id. p. 16; R. at 145-46.) Plaintiff further contends that the ALJ erred by failing to extend much weight, if any at all, to the testimony of her mother, who stated that Plaintiff had difficulty concentrating and also hallucinated. (Docket No. 8, p. 16; R. at 517-18.)

"In evaluating a claim for disability, an ALJ generally must consider any testimony concerning the claimant's physical ailments and resulting RFC offered by lay witnesses during the administrative hearing." McArthur v. Comm'r of Social Sec., No. 3:06 Civ. 860, 2008 WL 4866049, at *10 (N.D.N.Y. Nov. 7, 2008). Further, the ALJ must consider "any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone." SSR 96-7p, 1996 WL 374186, at *5 (parentheses in original). If relevant lay testimony is consistent with the record evidence, the ALJ's failure to discuss it constitutes plain error. McArthur, 2008 WL 4866049, at *10.

Here, this Court detects no error in the ALJ's treatment of the lay evidence at issue. First, the ALJ's failure to discuss the testimony of L. Omeara does not constitute plain error

9

because this testimony is inconsistent with the medical evidence of record.  See McArthur, 2008 WL 4866049, at *10.  Specifically, it conflicted with that of Drs. Syed S. Jaffri and Baskin, who opined that Plaintiff could follow and understand simple instructions, perform simple tasks, and that her judgment, concentration, and memory skills were intact.  (R. at 20-22.)[4]  Second, with respect to Ms. Mauerman's testimony during the hearing, the ALJ acknowledged it in his decision (R. at 23), but ultimately determined that it was not entitled to much weight.  Moreover, although the ALJ did not specifically weigh Ms. Mauerman's testimony, his failure to do so does not amount to plain error because her testimony is also inconsistent with the evidence of record.  McArthur, 2008 WL 4866049, at *10.  For instance, her statement that Plaintiff has difficulty concentrating contradicts the opinions of Drs. Jaffri and Baskin.  Additionally, her assertion that Plaintiff suffers from hallucinations is inconsistent with Dr. Baskin's report dated March 15, 2006, which stated there is "no evidence of hallucinations."  (R. at 246.)  Accordingly, this Court finds the ALJ properly considered the lay testimony and, therefore, complied with the requirements of SSR 96-7p.

15.     Sixth, Plaintiff argues that the ALJ erred because he substituted his own opinion for that of the medical experts.  (Docket No. 8, pp. 17-18.)  In support, Plaintiff first argues that the ALJ improperly interpreted medical findings because the overall medical evidence supports her complaints.  (Docket No. 8, pp. 17-18.)  Second, Plaintiff argues that the ALJ's finding in terms of her fibromyalgia condition was "in effect, a medical determination."  (Docket No. 8, p. 19.)

---

[4] Moreover, to the extent Plaintiff argues that the ALJ erred by not specifically addressing L. Omeara's opinion based upon her observation of her, this Court notes that the ALJ, like L. Omeara, directly observed Plaintiff, at the hearing, and found she displayed no memory problems or lack of concentration.  (R. at 25.)

With respect to Plaintiff's first argument, this Court finds that the ALJ fulfilled his statutory obligation by determining whether Plaintiff is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e)(1) (It is well-settled that the ultimate determination of whether a plaintiff meets the statutory definition of disability is reserved to the Commissioner). Moreover, there is nothing to indicate that the ALJ substituted his judgment for that of the medical professionals, or that the ALJ interpreted the medical findings. Rather, the ALJ carefully reviewed and weighed the medical evidence of record, including a number of test results, and ultimately determined that the evidence did not support Plaintiff's claim of disability. (R. at 20-26.)

In terms of Plaintiff's second argument, this Court notes that, in his March 15, 2006 opinion, Dr. Santasiero diagnosed Plaintiff as having fibromyalgia. (R. at 182.) Plaintiff argues that the ALJ erred because he "depreciated the gravity of [Plaintiff's] fibromyalgia due to the lack of objectively discernable symptoms." (Docket No. 8, p. 18.) However, after full review of Plaintiff's contention and the relevant law, this Court finds that Plaintiff's second argument is without merit.

Fibromyalgia has been defined as an "elusive and mysterious disease," largely because "[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." Bechler v. Astrue, No. 8:07 Civ. 0380, 2009 WL 5219030, at *5 (N.D.N.Y. Dec. 31, 2009) (quoting Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1998)). "Thus, the absence of clinical or diagnostic techniques does not diminish a diagnosis of fibromyalgia." Bechler, 2009 WL 5219030, at *5. Nonetheless, "while [courts] recognize that fibromyaligia is 'a disease that eludes [objective] measurement,' mere diagnosis of fibromyaligia without a

11

finding as to the severity of symptoms and limitations does not mandate a finding of disability." Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. May 28, 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003)).

Here, the record in this case fails to demonstrate that Plaintiff was diagnosed with "severe" fibromyalgia, resulting in marked limitations in her daily living activities. See, e.g., Rivers, 280 Fed. Appx. at 22; Wetherby v. Astrue, No. 08 Civ. 165, 2009 WL 1544012, at *8 (D. Vt. May 28, 2009); see also Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."). Instead, Dr. Santasiero's diagnosis of fibromyalgia, the only doctor to have made such a diagnosis, is devoid of any discussion with respect to Plaintiff's functional limitations as a result. (R. at 182.) Additionally, and as discussed at greater length below, Plaintiff's daily activities are inconsistent with her claim of severe limitations caused by fibromyalgia. (R. at 25.) Thus, this Court finds that the ALJ did not substitute his opinion for that of the medical professionals, and Plaintiff's sixth challenge is rejected.

16. Seventh, Plaintiff argues that the ALJ erred by finding she lacked credibility. (Docket No. 8, pp. 20-22.) Plaintiff argues that her complaints were entitled to great weight because they are supported by the medical evidence. (Id.) Plaintiff also argues that the ALJ failed to evaluate her credibility under the requirements of SSR 96-7p. (Id.)

Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make

determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar).

In terms of her first argument, this Court finds that Plaintiff has failed to demonstrate how her subjective complaints are supported by the objective medical evidence. In fact, to support her contention, Plaintiff largely relies on the opinions of individuals to which the ALJ extended little weight for the reasons previously discussed. (Docket No. 8, pp. 20-21.)[5]

With respect to Plaintiff's second argument, SSR 96-7p requires the ALJ to consider, among other things, the plaintiff's daily activities, any aggravating factors, and any measures used to relieve the pain. SSR 96-7p, 1996 WL 374186, at *2. Upon review of the decision, there is no doubt that the ALJ complied with the ruling's requirements. For instance, the ALJ discussed how Plaintiff's daily activities are not indicative of someone who is totally disabled. Specifically, Plaintiff reported that she did dishes, puzzles, laundry, swept, vacuumed, performed physical therapy exercises, walked, watched TV, spent time with friends, and chatted with her children on the phone. (R. at 25.) Additionally, the ALJ noted that, prior to moving in with her mother, Plaintiff traveled to her mother's house, goes out to dinner occasionally, and manages her own money. (R. at 25.) In terms of pain relief, the ALJ noted that Plaintiff has been noncompliant with medical visits and taking her medication. (R. at 24.) Specifically, the ALJ discussed that Plaintiff was discharged from physical therapy because she did not return for scheduled visits; she uses no assistive

---

[5] Specifically, Plaintiff argues that the testimony of Dr. Santasiero, Amy Socha, and Mr. Denecke constitute, in part, the objective medical evidence in support of her subjective complaints. (Docket No. 8, p. 21.) Plaintiff also cites to a number of opinions from different individuals who either examined or encountered Plaintiff. (Docket No. 8, p. 21.) However, Plaintiff's citation to isolated portions of testimony does not change the fact that the record *as a whole* supports the conclusion that Plaintiff is not disabled.

13

devices or back brace; she failed to follow up with her primary care physician following an emergency room visit in August 2005; and reported that she would rather "talk to a friend" as opposed to seeking psychiatric counseling. (R. at 24-25.) Accordingly, the ALJ's credibility determination is supported by substantial evidence.

18. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: March 1, 2010
       Buffalo, New York

                                    /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                             Chief Judge
                                  United States District Court